United States Good morning. May it please the Court, I'm Will Havenin on behalf of the government and Mr. Robert Bigler. The Court of Federal Claims committed a host of errors in sanctioning the government and Mr. Bigler based on a misunderstanding that develops during a bid protest. Can I ask you just one preliminary question? As I understand, we don't have the solicitation or the resulting contract in front of us, but as I understand there were two phases to contract performance. One, what we'll call the preparation period, getting the subcontractors in line, making sure the line was in place, and then the 60-month performance period. Is that correct? That's correct, that there are two elements to performance under the contract. One is called a lead time, which is basically the amount... And both were contract requirements. Both were work under the contract, that's right. And so the disagreement that the Court of Federal Claims predicated the sanction on was the theory that the government misinformed or concealed the fact that contract performance was underway, but that is simply, and respectfully, it's not correct. That is, from the very outset of the proceedings... Suppose I read the somewhat confusing, at least to me, series of communications, many of them oral, some of them written, as actually not reflecting a misunderstanding about the when the 60-month service period would begin, and that the court thought that it had been told more or less explicitly, but in any event, the message was conveyed that the 60-month service period of a already set up and fully prepared circuit would not begin until December 1st, and as a result of that assumption, you don't need to worry about stopping anything here, whether by TRO or preliminary injunction. If I'm understanding the court's question, so I think that that was in essence the predicate of the court's misunderstanding. You have indicated and provided much supporting material to make it clear that everybody, and now I'm going to say the court, understood that preparatory activity covered by the contract was underway. That was not what there was uncertainty about or what was, I think, the court thought was that it had been told the second phase, the much larger phase, the 60-month phase, would not begin until December 1st, and then November 1st came and the service began, and nobody told the court until the court made an inquiry. I think that, Judge Stronser, you're right that that was the source of the court's misunderstanding, but the start date, the transition from one phase of performance under the contract to another phase of performance, was not relevant to any question of law or fact at issue on the merits of the case, that is, the adequacy of Level 3's bid in this case, and counsel for the government believed that it had communicated to the court that it was not relevant to the question of the relief that the court could issue. Until the service on the new circuit, the STM 64, began, was Level 3 as the incumbent providing service for which it was being paid or not, either under the already set up fancier circuit or under the old STM 16? It certainly was not being paid under the new circuit, and I confess I don't know the answer to the question whether it was being paid under the old circuit, but I do know that Verizon had a set of costs, of fixed costs, that it was being paid for to prepare for the commencement of the 60-month lease, and what the government communicated to Judge Brayden from the very outset of the case was that the risk that a bid procurement would be found in this case laid solely with the government, that is, if the court found a procurement violation, as the court ultimately did, that what that would mean was that the government had to pay Verizon for the work it already did under the contract, and then it would have to re-solicit bids, and in the event that Level 3 earned the bid, or won the bid, it would then have to pay Level 3 for the same lead time work that Verizon had already done. What about for the same full 60 months? That's right, and that was communicated to the court on August 1st. I thought the colloquy on that was just a little bit less than fully clear, that is, the Level 3 lawyer picked up on the government lawyer's attempt to answer the question, gave a somewhat fuller statement, but used the word, I think, anticipated, that is, we would anticipate that if we won this protest and eventually won the re-competition, that we would get 60 months, but not, and I don't think the government ever squarely said, yes, you get the 60 months, so if service begins, really not a big deal. So I think that this is an important point, Judge Toronto. I believe that the reason that counsel for Level 3 said anticipated is because the lease was not actually for a definite term of 60 months, it was an estimated term of 60 months, and I think that we have a good sense that the estimated 60-month lease term would, in fact, be re-provided in the event that a procurement violation were found because that is, in fact, what happened in this case, that is, the court found a procurement violation, re-solicited bids, it turned out that Verizon again, Verizon won the bid this time, it won the contract, it had the lowest bid, and it was issued the contract again for an estimated 60 months, even though this was a year later. So, and I do think that it's important to point out two things, first, that what was communicated to the court was that the performance of the contract by Verizon would not affect the relief that Level 3 could get if it were ultimately successful in the case, and second, just to take a step back, I mean, this was a sanction that was imposed pursuant to the court's inherent powers based on an alleged violation of the duty of candor to the court. So even if the court believes that the parties could have been clear with respect to exactly what was going on, even if the court believes that it would have been advisable to inform Judge Brayden that the circuit had been delivered early, the facts below simply cannot sustain a finding that anything was done for bad faith. And I do want to point out one sort of, I think, particularly troublesome element of the court's sanctioned opinion, which was the finding that this was done with a specific motive, that is, that this was done with the motive of preventing Level 3 from being compensated for any work that it would ultimately do. What are you, can you point me to where? Sure, this is on page 17 of our appendix, and I believe that we reproduce it in our brief as well, and the court says, and this is a quote, that the alleged misrepresentation You said there's a lot of words on the page, high, low, middle, where? I can pull it out. Oh, you have it typed out, I see. It is near the top, that first paragraph. Yes, it's in the first paragraph, where the court says that the alleged misrepresentation was made for the sole purpose of persuading the court not to enter an injunction so that Verizon could continue and complete performance of the circuit, depriving Level 3 of the opportunity to do that work and be paid for that work. There is simply no support for that suggestion in the record. Is there no support for that because, and I will assume here that there is a dual notice problem for purposes of this question, that there was a failure to give notice that inherent authority with its high bad faith standard and a failure to give notice that the individual attorney was subject to sanctions. With such notice, there might in fact have been a more complete record, more exploration. But in order for you to get what I think you seek, which is an outright reversal as opposed to a vacate and a remand with now proper notice given, you need to, I think, tell me if I'm wrong, but persuade us that the record as we have it simply could not support or in enhanced record with a greater focus could not support an essential element, namely bad faith, of a sanction under inherent authority. And I'm not sure we know enough about the matter with a one-sided presentation and a trimmed record to know that we can end the matter. Respectfully, Judge Taranto, I think that there is enough information in the record before this court to say definitively that even if adequate notice had been provided, and I certainly agree with you that the notice here was inadequate for the two reasons you suggested, but even with all the... I was taking those as assumptions for purposes of my question. For purposes of the question, I understand, but I do agree with the premise of that assumption. But even if proper notice had been provided, the facts and the record below simply cannot sustain the high showing that would be required to find bad faith in this case. Suppose it were right, I think you said early on in your argument here, that you didn't actually know whether Level 3 was getting paid for service before the new contract took effect. Suppose it turned out that one of the ways that the onset date might not have been paid matter is that Level 3 would keep getting paid under its incumbent arrangement until such time as the new contract, the service part of the new contract began. Why would that not have mattered in the Court of Federal Claims' consideration of whether to issue either a T.R. or a preliminary injunction, which I think there was never actually any ruling on the preliminary injunction. There was no ruling on the preliminary injunction. There was an oral... But that's what the Court was considering in September and was focused on if the service part began, does that have some adverse consequence for the protester who ultimately prevailed? Ultimately in this proceeding prevailed not on getting the contract. The answer is no, it wouldn't and that's because as the parties explained to the court, the performance of the contract, the performance by Verizon of this prep work would not affect Level 3's ability to be paid for exactly what it would have been paid for had it got the contract in the first place and so whether or not it was being paid sort of in the interim under a pre-existing contract is not relevant to the question of the relief that Level 3 could get on Level 3's challenge to this procurement and not only is that just correct as a matter of fact, but it was communicated to the court verbally on August 1st and it was continually communicated to the court thereafter and the predicate for this sanction was the fact that the government allegedly concealed from the court the fact of ongoing contract performance when in fact they had the government and... That's actually the part that feels not quite the right description of the premise. I'm prepared I guess to assume that if it was obvious to you and to Level 3 and to Verizon including in the words of your August submission that some part of performance was underway, namely the preparatory part, that the judge was not confused about that either but was very focused on whether the service part would begin and that there was every reason to be taking from the government's attorney the proposition that service would not begin until December 1st. There wasn't a... But of course it might start earlier if the preparatory work goes faster than we thought and then November 1st comes and I think the transcript indicates that the government attorney said he knew on November 1st that the change had come, that that was communicated to the court. That's right but again the reason that that was not communicated to the court was because it simply was not relevant to the question that all parties understood to be at the core of the court's concern which is whether or not Level 3 could get relief in the event that a procurement violation were found. And not only was it not relevant but the parties explained to the court that it was not relevant and the court declined to stay the proceedings and in fact informed counsel for Level 3 that the government was unwilling to stay the contract while the bid protest was resolved. And so given that fact, certainly knowing... If we had known then, if the government had known then, what the government knows now, that is that the court believed that performance of the contract in some sense at least would not begin until actual delivery of the circuit to DISA at the start of the estimated 60-month lease, that that constituted performance, then of course it would have been advisable to inform the court of that fact and we're not here to dispute that and we're not here to dispute or to suggest that we do not regret the misunderstanding that developed. But again this was a sanction that was predicated on a finding, at least implicit, of bad faith and it could only be sustained on a finding that the government here proceeded in bad faith, that is either knowingly or consciously with the intent to mislead the court with respect to a certain fact. And no matter how you look at it, no matter what process you give to the parties, there's no way we believe that the facts of this case can give rise to any suggestion of bad faith. If there are no further questions, we ask that the court reverse. Thank you very much.